Linda Johnson, a Minor, by Her Father and Next Friend, Lace M. Johnson, Plaintiffs-Appellants, v. James C. Cunningham, Defendant-Appellee.
Lace M. Johnson, Plaintiff-Appellant, v. James C. Cunningham, Defendant-Appellee.

Gen. Nos. 68–79, 68–80. 

Second District.

January 23, 1969.

John P. Graves, Jr., Gilbert, Powers & Graves, of Rockford, for appellants.

Maynard, Maynard and Brassfield, of Rockford, for appellee.

MR. PRESIDING JUSTICE ABRAHAMSON delivered the opinion of the court.

On December 18, 1964, between 7:30 and 8:00 p. m., an automobile driven by the plaintiff, Lace Johnson, was struck by one driven by the defendant, James Cunningham, in the intersection of Leland and Wilson Avenues in Loves Park, Winnebago County. Lace Johnson and his minor daughter, Linda, who was riding with him, were injured as a result of the accident and separate suits were brought against the defendant that alleged the accident was caused by his negligence and sought recovery against him for the injuries suffered and damage to the

Johnson automobile. The suits were consolidated for trial and at its conclusion the jury returned a verdict that found the defendant not guilty in both suits and a special finding that Lace Johnson was guilty of contributory negligence. Judgment was entered on the verdicts and, after denial of post-trial motions, this appeal followed.

Lace Johnson testified he was driving north on Leland Avenue (a north-south street) on the occasion in question and had reduced his speed to approximately fifteen miles per hour as he approached the intersection with Wilson Avenue since he intended to stop at the northeast corner and drop off his daughter. He first observed the Cunningham auto westbound on Wilson (an east-west street) when he was 40 feet south of the intersection and "thought" he had ample time to clear the intersection since Cunningham was about 200 feet east of it. The next time he observed the other car was just before the impact. He further testified that his front bumper was across Wilson at the moment of impact.

Steven Blankenship testified for the plaintiff that he was waiting with his girl friend for their mutual friend, Linda Johnson, on the northwest corner of Wilson and Leland Avenues about 50 feet from the intersection and observed the accident. Blankenship first saw the Cunningham automobile when it was 60 feet east of the intersection and "coming very fast." He stated that the Johnson car had reached the north edge of the intersection by that time. One second later the impact occurred.

Lace Johnson had given a statement to a court reporter 10 days after the accident to the effect he recalled nothing that occurred either immediately prior to or at the time of impact. Blankenship had also given prior statements inconsistent with his testimony during the trial.

Cunningham testified that he was driving west on Wilson about 30 miles per hour. When he was approximate-

ly 60 feet from the intersection, he turned his head slightly to the right to observe a southbound vehicle on Leland that then made a left turn onto Wilson. He first saw the Johnson car when it was "not in the intersection but pretty close to it." His front bumper struck the right side of the Johnson car.

The evidence further disclosed that both Leland and Wilson Avenues are narrow, blacktopped roads with no curbs and no traffic controls at the intersection. A police officer investigated the accident and concluded that the impact occurred about 4 feet west of the east edge of Leland and 8 feet south of the north edge of Wilson. Both cars came to rest a considerable distance from the point of impact.

This appeal is based on the plaintiffs' contention that they were denied a fair trial because of the improper conduct and comments of the defense counsel during the trial; the refusal of the trial court to permit the impeachment of a defense witness; the elicitation of prejudicial testimony during an improper cross-examination conducted by defense counsel; and an erroneous instruction given the jury by the trial court.

The plaintiffs urge that defense counsel engaged in a calculated and persistent effort to demean and degrade the attorney for the plaintiffs before the jury and cite numerous instances to support that contention. They point out that defense counsel, during a voir dire examination conducted by plaintiffs' attorney, characterized a short preliminary statement as a "half hour examination"; during the trial reprimanded his opponent for making a "speech"; remarked that a question posed by the plaintiffs' attorney that elicited an unresponsive answer "should not have been asked"; and that on other occasions had laughed at the attorney for the plaintiffs, and made insinuations that he was guilty of unspecified misconduct. It is certainly true that trial attorneys should not engage in personal vituperation however long, however arduous and however close the character of the litigation. "Abuse

410

of opposing counsel . . . has no proper place in a trial." Eizerman v. Behn, 9 Ill App2d 263, 287, 132 NE2d 788.

██ We have carefully reviewed the record in regard to these instances of alleged abuse by defense counsel of his opponent. We find that the remarks on some occasions were not consistent with the decorum of a trial but that they had shown no pattern of personal attack or vituperation. We are unable to find any insinuations, implied or otherwise, that the attorney for the defendant was guilty of misconduct. While we deplore any instances of personal criticism between trial counsel during the course of a trial, we would not be realistic if we did not recognize that during a 4-day trial frayed nerves will occasionally permit sharp exchanges to occur. The instances in this case were few, brief, isolated and not of such a character to prejudice the plaintiffs by the degradation of their counsel.

In addition to the personal attack on counsel, the plaintiffs complain that they were prejudiced by the implication that Lace Johnson was present when a court reporter took the inconsistent statement made by Steven Blankenship prior to trial. However, it is clear that the witness referred to an adjustor named Walter Johnson and the jury was so informed. Similarly, the occasional confusion in the use of terms "deposition" for "statements" and "certainty" for "reasonable medical certainty" during the testimony of some witnesses was quickly and effectively corrected.

 Plaintiffs further contend prejudice resulted by defense counsel's and the Court's description of certain written evidence as "illegible." Shortly after the accident, Cunningham had been interviewed by an agent of Johnson. The agent then wrote out a statement in his own hand and it was signed by Cunningham. It was admitted into evidence over objection since Cunningham himself was illiterate. When the statement was first produced during the trial, defense counsel remarked that he had not previously seen it and, later, that the copy

411

previously furnished him pursuant to a pretrial motion was illegible. The trial court, at the request of the plaintiffs, then advised the jury that the document previously furnished the attorney for the defendant was a copy of the statement signed by Cunningham and added that it was "rather illegible." Plaintiffs argue that this gratuitous comment by the court compounded the wrong in view of the august position held by the bench in the eyes of the jury. The comment was unnecessary but not every comment or "unguarded expression" of a trial judge is reversible error unless prejudice is clearly shown. Northern Illinois Gas Co. v. Wienrank, 66 Ill App 2d 60, 76, 213 NE2d 411. We find none here.

■■ It is necessary to consider the trial as a whole to determine if a party has been denied his constitutional right to a fair trial by the misconduct of the other litigant or his counsel. The trial court is, of course, in a unique position to make this determination since it has heard all the testimony, all of the argument, observed the parties and their counsel and their effect on the jury. For this reason the sound rule exists that the question rests within the sound discretion of the trial court and will not be disturbed unless it is clear that the court has abused that discretion. West Chicago St. R. Co. v. Annis, 165 Ill 475, 46 NE 264; Owen v. Willett Truck Leasing Corp., 61 Ill App2d 395, 402, 209 NE2d 868; Eizerman v. Behn, supra. Although we have not discussed all of the instances raised in the plaintiffs' brief, we have reviewed the record as a whole and agree with the conclusion of the trial court that the plaintiffs were not denied a fair trial by the prejudicial conduct of counsel.

During the course of his cross-examination of Lace Johnson and Steven Blankenship, the attorney for the defendant used a court reporter's statement for purposes of impeachment. The court reporter, Harry Libby, was later called to testify as to the authenticity of his transcribed statements which had been taken in Gregg shorthand. In his cross-examination of Libby, the plaintiffs'

attorney attempted to bring out that a symbol contained in the reporter's notes was not a "no," as contended by the witness, but some other word. Libby explained that the notation was the Gregg Symbol for "no" but that it was taken down under adverse conditions and, as a consequence, was somewhat distorted. Libby circled the notation in his transcript at the direction of the plaintiffs' attorney.

At the close of the defendant's case, plaintiffs' counsel sought to introduce that page of Libby's notes that included the circled symbol into evidence and asked leave to call another Gregg reporter or to testify himself that the symbol was not a "no" under the Gregg system. The trial court rebuked the attorney for his dilatory tactics and did not permit either the introduction of the pertinent page into evidence or any further testimony to impeach Libby.

 The record indicates that these lawsuits were filed approximately 2 and one-half years before trial. Libby's notes were available to the plaintiffs at any time through normal discovery procedures. A further delay to obtain an additional witness on the last day of trial would have been completely unreasonable under these circumstances. Although counsel stated that he had been a court reporter in the U. S. Army, his credentials as an expert were extremely dubious and the ruling of the trial court was well within its discretionary control of the conduct of a lawsuit.

 Next, it is argued that the cross-examination of David Korf, a deputy sheriff of Winnebago County, was improper. Korf arrived at the scene shortly after the accident and testified as to road conditions and the position of the automobiles. He also testified, on direct examination, as to a conversation he had with Cunningham 10 days after the accident and related a substantial portion of that conversation. On cross-examination, Korf was asked, and, over objection, answered as to the bal-

ance of his conversation with Cunningham. It is well established that where one party brings out a portion of a conversation, the other party may cross-examine on all of the conversation. People v. Nakutin, 364 Ill 563, 5 NE 2d 78. Korf was also cross-examined, however, about a conversation he had with Steven Blankenship. He testified, over objection, that Blankenship had not informed him as to the speed of Cunningham's car and that Blankenship did tell him that he had looked up just at the time of the impact. At the trial, plaintiffs objected that the questions relative to Korf's conversation with Blankenship were "leading and suggestive" and beyond the scope of the direct examination. On appeal, the plaintiffs contend the matter was inadmissible as hearsay. The defendant contends that the conversation was admissible to impeach Blankenship who had testified that he observed the accident and that Cunningham's car was traveling between 40 and 45 miles per hour. Normally, the scope of cross-examination is left to the trial court. While ordinarily cross-examination should be confined to matters brought out in direct examination, the trial judge has wide discretion and may permit other pertinent matters to be elicited. Young v. Miller, 79 Ill App2d 463, 223 NE2d 854. We do not feel the trial court abused its discretion in permitting Korf to be cross-examined relative to his conversations with Blankenship.

We will not consider the final point raised by the plaintiffs relative to the instructions since none of the instructions are abstracted. People v. Donald, 29 Ill2d 283, 194 NE2d 227; People v. Habdas, 94 Ill App2d 330, 236 NE2d 731.

■ For the reasons given, the judgment of the trial court will be affirmed.

Judgment affirmed.

MORAN and SEIDENFELD, JJ., concur.